IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIC M. MISKOVITCH,                )
                                   )
                    Plaintiff,      )
                                   )
v.                                 )    Civil Action No. 08-1474
                                   )    Magistrate Judge Lisa Pupo Lenihan
JAMES J. WALSH, ESQ,               )
                                   )
                    Defendant.      )

## <u>MEMORANDUM OPINION</u>

Plaintiff Eric M. Miskovich ("Plaintiff"), filed this law suit against Defendant James J.

Walsh ("Defendant"), pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983.  Plaintiff

alleges that Defendant, who is Plaintiff's court-appointed attorney[1] in a criminal matter in State

court, violated Plaintiff's rights under the Sixth and Eighth Amendments to the United States

Constitution by "conspir[ing] with state officials to deny [him] of bail. . ."[2]  <u>See</u> Am. Compl.

(Doc. No 8), at 4.  Defendant filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure.  <u>See</u> Def.'s Mot. to Dismiss (Doc. No. 12), at ¶ 22.  For the reasons

stated below, this Court will dismiss Plaintiff's complaint without prejudice.  Plaintiff will be

given twenty days in which to amend his complaint.  Failure to do so will result in the dismissal

---

[1]As of November 14, 2008, Plaintiff's filings with this Court indicate that Defendant had
not been given permission to withdraw from Plaintiff's criminal case.  <u>See</u> Demand for Trial by
Jury (Doc. No. 9), at ¶ 4.  Defendant's motion to dismiss implies, without explicitly stating, that
Defendant had not withdrawn from Plaintiff's criminal case as of January 9, 2009.  <u>See,
generally</u>, Doc. No. 12.

[2]Plaintiff refers throughout his complaint to the violation of his rights under "U.S.C.A. 6
and 8"  <u>See</u>, <u>e.g.</u>, Doc. No. 8 at 3. Through the context provided by the language of Plaintiff's
filings, it is apparent that "U.S.C.A. 6 and 8" refers to the Sixth and Eighth Amendments to the
United States Constitution.

of this suit with prejudice.  In the event of amendment, Defendant will be given twenty days

from the date of the amended complaint in which to re-file a motion to dismiss, at his discretion.


## I. BACKGROUND

Plaintiff, an inmate at Allegheny County Jail in Pittsburgh, Pennsylvania ("ACJ"), filed

this suit *pro se* on October 20, 2008.  Plaintiff was granted permission to proceed *in forma*

*pauperis* on October 27, 2008.  See Doc. No. 2.  Plaintiff filed an amended complaint with this

Court on November 6, 2008.  Defendant, also appearing *pro se*, filed a motion to dismiss

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on January 9, 2009.  See Def.'s

Mot. to Dismiss (Doc. No. 12), at ¶ 22.   Defendant failed to serve a copy of this motion on

Plaintiff; however, a copy was served by this Court on February 11, 2009.  Plaintiff timely

responded to Defendant's motion on February 19, 2009.  See Pl.'s Resp. to Def.'s Mot. to

Dismiss (Doc. No. 15).  Plaintiff consented to jurisdiction by a Magistrate Judge on October 27,

2008.  See Doc. No. 5.  Defendant consented to the same on April 29, 2009.  See Doc. No. 17.

Plaintiff makes the following allegations in his complaint, as amended.[3]  Defendant, in

his capacity as Plaintiff's court-appointed criminal attorney, filed a motion in State court for

nominal bond on Plaintiff's behalf.  This motion was denied by a State court judge on August 27,

2008.  See Doc. No. 15 at 4.  Plaintiff, believing the denial to be improper, directed Defendant to

---

[3]Plaintiff alleges facts both in his amended complaint, Doc. No. 8, and in his response to
Defendant's motion to dismiss, Doc. No. 15.  For the purposes of this opinion, the facts alleged
in Plaintiff's response brief will be treated as amendments to his complaint, and will be included
in the factual summary.  However, this Court cautions Plaintiff that, should he choose to file an
amended complaint in response to the order following this opinion, he must plead *all* facts
relevant to his claims in that filing.

appeal. Doc. No. 8 at 3.  Defendant refused, allegedly stating that "'it's not appealable.'"  Id.

Plaintiff disagreed with this assessment, and alleges to have confronted Defendant with case law

supporting his position, at which point Defendant stated "the Court only pays me after your case

is over and frowns on pre-trial interlocutory appeals."[4]  See id.; see also Doc. No. 15 at 4.

Plaintiff and Defendant also discussed filing a petition for writ of Mandamus, but decided at an

unspecified date that such a decision would be improper.  See Doc. No. 15 at ¶¶ 3-5.

Plaintiff alleges that Defendant lied to him about the appealability of the denial of his

motion for nominal bond.  See Doc. No. 8 at 3.  Plaintiff contends that Defendant was unwilling

to appeal the denial of bond because the manner in which the Court of Common Pleas of

Allegheny County compensates appointed defense counsel creates a disincentive for counsel to

file pretrial appeals or motions.  See id. at 3-4.  This is because appointed defense counsel is

typically not paid until after the conclusion of a criminal case.  See id. at 3; see also Doc. No. 12

at ¶ 11.  Furthermore, Plaintiff alleges that it is common practice for judges in that court to "cut"

attorney and expert witness fees by up to fifty percent, creating further disincentive for attorneys

and expert witnesses to invest significant effort in the defense of indigent clients.  See Doc. No.

8 at 3; see also Doc. No. 15 at 3-4.  Plaintiff avers that the "cutting" of fees is practiced by

various administrative judges, stating that "[a]t least (10) ten lawyers have explained to [him]

how one judge 'cuts' an attorneys [sic] billable hours. . ."  See Doc. No. 8 at 4.  Plaintiff names

Administrative Judge Donna Jo McDaniel in particular as one judge who engages in the

---

[4]This Court makes no decision on the merits of Plaintiff's motion for bond in State court.

practice.[5]  See Doc. No. 15 at 3-4.  Plaintiff also describes an instance where Judge David

Cashman "cut" the fee of Plaintiff's expert witness in his criminal case by fifty percent,

insinuating that the reason for the reduction was that Plaintiff chose to use an expert other than

the one suggested to him by that court.[6]  See Doc. No. 15 at 3.  With respect to this incident,

Plaintiff stats that "Defendant Walsh allowed me to lose my expert and was terrified to appeal or

re-file for this expert."  Id.

Plaintiff concludes that Defendant's knowing entry into a contract with such a payment

structure creates so great a financial disincentive to advance one's client's interests in court that

it constitutes a conspiracy with "various administrative judges" and other state officials to violate

Plaintiff's rights under the Sixth Amendment to the United States Constitution.  See Doc. No. 8

at 4.  Furthermore, Plaintiff argues that any attorney who knowingly enters into this contract

deprives his or her client of their right to counsel.  See Doc. No. 15 at 5.  Specifically, Plaintiff

states that Defendant has "knowingly contracted with Allegheny County [Pennsylvania] in

conspiratorial concert."  Doc. No. 8 at 5.  Plaintiff points to contact that Defendant has had with

judges and other state officials in the normal course of his business as an attorney as evidence of

this conspiracy.  See Doc. No. 15 at 3..  Plaintiff also mentions a meeting between Defendant

and Judge Cashman over drinks at a restaurant, during which Judge Cashman is alleged to have

stated that most criminal defendants find either "'the Law or God.' while incarcerated."  Id.

Additionally, Plaintiff insinuates, but does not explicitly state, that the denial of permission for

---

[5]Judge McDaniel is not named as a Defendant in this suit.  Since the filing of this suit, she has been elected President Judge of the Court of Common Pleas of Allegheny County.

[6]Judge Cashman is not named as a defendant in this suit.

4

Defendant to withdraw from his criminal case after the suit *sub judice* was filed is evidence of the existence of a conspiracy against him.  See Doc. No. 9 at 1.

Plaintiff seeks three forms of relief from this Court.  First, Plaintiff asks this Court to "[d]eclare there is a difference between 'counsel' and a 'lawyer'. . ."  Second, Plaintiff requests this Court to direct that he receive counsel.  Third, Plaintiff requests this Court to "[d]eclare Alleg[heny] Co[unty] policy on attorney payment [and] compensation creates divergent financial interests [and] compromises the veracity of attorney representation [and] essentially creates a conspiracy to sell-out clients."  See Doc. No. 8 at 5.


## II.  STANDARD OF REVIEW

When adjudicating a 12(b)(6) motion, a court must dismiss a complaint that does not allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This is not to say that the Supreme Court requires "heightened fact pleading of specifics . . ."  Id. at 570.  However, "factual allegations must be enough to raise a right to relief above the speculative level."  Id. at 555.  The Court has made it clear that the requirement that pleadings must be facially plausible, as expressed in Twombly, applies to all civil suits in the federal courts.  See Ashcroft v. Iqbal, 129 S.Ct. 1937 (May 18, 2009).

A court must accept as true all allegations of the complaint, and all reasonable factual inferences must be viewed in the light most favorable to the Plaintiff.  See Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).  However, a court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the

complaint.  See California Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 143 (3d

Cir. 2004).  Nor must a court accept legal conclusions set forth as factual allegations.  See

Twombly, 550 U.S. at 555.  Furthermore, it is not proper for the court to assume that "the

[plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated

the . . . laws in ways that have not been alleged."  Associated Gen. Contractors of California, Inc.

v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

    The United States Court of Appeals for the Third Circuit has recently held that, when

entertaining a motion to dismiss pursuant to Rule 12(b)(6), a district court should apply a two-

part test in order to determine whether a pleading's recitation of facts is sufficient to survive the

motion.  See Fowler v. UPMC Shadyside, No. 07-4285, 2009 WL 2501662 (3d Cir. Aug. 18,

2009).  "First, the factual and legal elements of a claim should be separated.  The District Court

must accept all of the complaint's well-pleaded facts as true, but may disregard any legal

conclusions."  Id. at *5 (citing Iqbal, 129 S.Ct. 1949).  "Second, a District Court must then

determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a

"'plausible claim for relief.'"  Fowler, 2009 WL 2501662, at *5 (quoting Iqbal, 129 S.Ct. 1950).

    A court must employ less stringent standards when considering *pro se* pleadings than

when judging the work product of an attorney.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

In a section 1983 action, the court must liberally construe a *pro se* litigant's pleadings and 'apply

applicable law, irrespective of whether a *pro se* litigant has mentioned it by name.'  Higgins v.

Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d

244, 247-48 (3d. Cir. 1999)).  "Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to

relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution."

6

Higgins, 293 F.3d at 688 (quoting Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)).

 Finally, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile.  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).  This was originally a reaction to the rule requiring heightened factual pleading in civil rights cases.  See id. (citing Darr v. Wolfe, 767 F.2d 79, 80-81 (3d Cir. 1985) (requiring district court to exercise their discretion to allow *pro se* plaintiffs to amend their claims to avoid dismissal)); see also Dist. Council 47 v. Bradley, 795 F.2d 310, 316 (3d Cir. 1986) (extending the *pro se* amendment rule to counseled complaints).  This rule remains, and has been periodically affirmed, even after the Supreme Court's 1993 decision in Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993), which abrogated the heightened pleading rule in civil rights cases.  See Fletcher-Harlee Corp., 482 F.3d at 252 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)).

## III.  ANALYSIS

 In order to state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds by*

Daniels v. Williams, 474 U.S. 327, 330-331 (1986).


    A.  Court-Appointed Attorneys as State Actors

It is well established that neither a court-appointed attorney nor a public defender can be considered to be "acting under color of state law" when that attorney is performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.  See, e.g., Albrecht v. Hamilton, 233 Fed.Appx 122, 124 (3d Cir. Apr. 26, 2007) (citing  Polk County v. Dodson, 454 U.S. 312, 325 (1981)).  Despite the fact that these attorneys may eventually be paid by the state for their services, defense lawyers cannot be "servant[s] of an administrative superior" in the same manner as a traditional agent of the state.  See Dodson, 454 U.S. at 321.  This is because a defense attorney, whether privately retained, court-appointed, or public defender, is bound by "cannons of professional responsibility that mandate his [or her] exercise of independent judgement on behalf of the client" and which require a defense attorney to advance the interests of the client over those of the state.  Id. at 318-319, 321.

However, this is not to say that a defense attorney cannot act in such a manner so as to be exposed to liability under section 1983.  The United States Supreme Court has recognized that an otherwise private person acts "under color of" state law when he or she enters into a conspiracy with state officials to deprive another of his or her federal rights.  See Dennis v. Sparks, 449 U.S. 24, 27-28 (1980).  In Tower v. Glover.  467 U.S. 914 (1984), the Supreme Court applied this rule to facts in which a former criminal defendant alleged conspiracy between his public defender and state officials to deny him of his Constitutional rights.  In its analysis, the Court first reaffirmed its holding in Dennis.  See Tower, 467 U.S. at 920.  Then, the Court determined that

8

"public defenders have no immunity from [section] 1983 liability for intentional misconduct of the type alleged here." Id. at 921.  As such, if Plaintiff is able to allege properly that Defendant conspired with state officials to deprive Plaintiff of his rights under the Constitution, then Defendant could be considered a state actor for the purposes of liability under section 1983.

   B.  Pleading Conspiracy

   In order to demonstrate a conspiracy, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of state law.'" Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993) (quoting Adickes v. S. H. Kress & Co., 398 U.S. 144, 150 (1970)), *abrogated on other grounds*, United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392 (3d Cir.2003). Under the law of the Commonwealth of Pennsylvania, to state a claim for conspiracy, a plaintiff must allege:

   1)   A combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose;

   2)   an overt act done in pursuance of the common purpose; and

   3)   actual legal damage.

Goldstein v. Phillip Morris, Inc., 854 A.2d 585, 590 (Pa. Super. Ct. 2004) (citation omitted).

   A plaintiff must allege conspiracy with particularity even though a heightened pleading standard generally does not apply to civil rights actions against individual defendants. Bieros v. Nicola, 860 F. Supp. 223, 225 (E.D. Pa. 1994) (citing Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)). A complaint alleging a conspiracy

9

must make "factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events."  Spencer v. Steinman, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997).  See also Loftus v. Southeastern Pa. Transp. Auth., 843 F. Supp. 981, 987 (E.D. Pa. 1994) ("While the pleading standard under [Fed.R.Civ.Proc.] Rule 8 is a liberal one, mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy the Rule's requirements").

With these requirements for stating a claim of conspiracy in mind, this Court must examine Plaintiff's pleadings to ascertain wether they allege sufficient facts to support Plaintiff's legal claims.

### C.  Examination of Plaintiff's Pleadings

In order to examine Plaintiff's amended complaint for sufficiency, it is necessary to apply the Third Circuit Court of Appeals' test under Fowler.  See 2009 WL 2501662, at *5.  This Court begins by separating the factual and legal elements of Plaintiff's claims.  Plaintiff's factual allegations consist of the following.  First, Defendant refused to file an appeal of the denial of Plaintiff's motion for nominal bond.  Second, Defendant has had contact with state officials through the normal course of his business, and, in at least one instance, has spoken with Judge Cashman over drinks at a restaurant.   Third, attorneys appointed to represent criminal defendants in the Court of Common Pleas of Allegheny County are not paid, except in rare instances, until after the conclusion of a case.  Fourth, judges in the Court of Common Please of Allegheny County will "cut," the amount of fees requested by court-appointed attorneys and expert witnesses.  The frequency of these "cuts" is not alleged.  Fifth, the manner in which

appointed attorneys are compensated by the Court of Common Pleas of Allegheny County creates a financial disincentive for them to file pretrial motions and appeals. Sixth, this disincentive caused Defendant to lie to Plaintiff about the appealability of the denial of nominal bond in his criminal case. Finally, Defendant was too "terrified" to appeal the "cutting" of the fees for Plaintiff's expert witness, which subsequently caused the loss of said witness.

The legal arguments made in Plaintiff's complaint, as amended, consist of the following. First, the denial of Plaintiff's motion for nominal bond was improper. Second, the contract into which Defendant entered as court-appointed counsel was illegal and unconscionable. Under the Fowler test, this court is not required to give any weight to these legal conclusions. Furthermore, this Court notes that under Loftus, Plaintiff's bare incantation of the terms "conspiracy" and acted "in conspiratorial concert" are not enough to allege the existence of a conspiracy, or, if one did exist, that Defendant was a part of it. See 843 F. Supp. at 987. Instead, this Court must examine Plaintiff's properly-pleaded factual allegations, in order to determine whether they themselves support a plausible claim of conspiracy. See Fowler, 2009 WL 2501662, at *5.

At the outset of this analysis, it seems highly implausible from the facts alleged by Plaintiff that a conspiracy exists to deny Plaintiff of his Constitutional rights. The payment schedule for appointed criminal counsel in Allegheny County, and the Court of Common Pleas' alleged propensity for "cutting" bills for legal fees, seems to be, when viewed through the lens of this Court's "judicial experience and common sense," see Iqbal, 129 S.Ct. at 1995, more plausibly explained as an attempt by the administration of that court to adhere to a budget.

Even assuming, *arguendo*, that a conspiracy does exist on the part of court officials to deny indigent criminal defendants of their Constitutional rights, Plaintiff has not pleaded proper

11

facts to allege that Defendant is a part of it. Beyond making bare legal conclusions, such as that Defendant has acted "in conspiratorial concert" with state officials, Plaintiff has not made any factual allegations of Defendant's personal involvement in a conspiracy to deny Plaintiff of his rights under the Sixth or Eighth Amendments.  To the contrary, instead of alleging a meeting of the minds between Defendant and various officials of the state, Plaintiff has characterized Defendant as "terrified to appeal. . ." see Doc. No. 15 at 3, and "intimidated by Fiscally [*sic*] Judge's [*sic*]," see id. at 6.  Plaintiff further characterizes this suit as an attempt to ensure that Defendant is properly paid for whatever legal work that he does on Plaintiff's behalf.  See id. These statements do not describe Defendant as someone engaged in a "combination, agreement, or understanding" to violate Plaintiff's Constitutional rights.

Given that Plaintiff has failed to allege sufficient facts to state a claim that Defendant is or was personally involved in a conspiracy to deny his rights under the United States Constitution, this Court must dismiss Plaintiff's suit.  However, it appears at least arguable that it would not be futile to give leave to Plaintiff to amend his complaint, in order that he might allege the necessary facts to state a claim upon which relief may be granted .  As such, out of an abundance of caution, this Court will dismiss this case without prejudice, and grant Plaintiff twenty days in which to file an amended complaint.

## IV.  CONCLUSION

For the reasons stated above, this Court will dismiss Plaintiff's complaint without prejudice.  Plaintiff will be given twenty days in which to amend his complaint.  Failure to do so will result in the dismissal of this suit with prejudice.  In the event of amendment, Defendant will

12

be given twenty days from the date of the amended complaint in which to re-file a motion to

dismiss, at his discretion.  An appropriate order will follow.


Dated:  September 22, 2009                    By the Court:


                                                    _____
                                                    LISA PUPO LENIHAN
                                                    United States Magistrate Judge


cc:     Eric M. Miskovitch
        49844
        Allegheny County Jail
        950 2nd Avenue
        Pittsburgh, PA 15219-3100

        counsel of record